ANNE ROBINSON, as Administratrix of the Estate of PATRICK
   ROBINSON, Deceased, Respondent, *v.* CONSOLIDATED GAS
   COMPANY OF NEW YORK, Appellant.

**Doctrine res ipsa loquitur stated— erroneous application thereof.**

The doctrine *res ipsa loquitur* does not permit a recovery without proof
   of negligence, but it regulates the degree of proof required under cer-
   tain circumstances, and is applied when the inference of negligence is
   required by the nature of the occurrence.   If the entire occurrence
   as proved could not have happened without negligence of some kind,
   negligence is presumed, and the burden of explanation is upon defend-
   ant.   If proof of the occurrence shows the accident might have hap-
   pened from some cause other than defendant's negligence, such pre-
   sumption does not arise, and the doctrine cannot properly be applied.
Decedent was killed by the falling of a scaffold upon which he was at
   work with another.   They applied severe vertical strain to the scaffold
   by attempting to uncouple a pipe overhead, and while so doing it fell.
   The court charged: " I instruct you under the maxim *res ipsa loquitur*,
   which means that things speak for themselves, that the scaffold must have
   fallen because there was something the matter with it." *Held*, error.
*Robinson* v. *Consolidated Gas Co.*, 125 App. Div. 914, reversed.

   (Argued December 9, 1908;  decided January 5, 1909.)

   APPEAL from a judgment of the Appellate Division of the
Supreme Court in the first judicial department, entered May
13, 1908, affirming a judgment in favor of plaintiff entered
upon a verdict and an order denying a motion for a new
trial.

   The nature of the action and the facts, so far as material,
are stated in the opinion.

   *Theron G. Strong* for appellant.   The court erred in
charging the jury that no witnesses told how or why the scaf-
fold fell and, therefore, the maxim *res ipsa loquitur* applied.
(*Cunningham* v. *Dady*, 191 N. Y. 152;  *Duhme* v. *H. A. P.
Co.*, 184 N. Y. 404;  *Griffen* v. *Manice*, 166 N. Y. 188.)   The
court erred in refusing to submit the question of negligence
to the jury.   (*Dambmann* v. *M. S. R. Co.*, 180 N. Y. 384;

*Cunningham* v. *M. S. R. Co.*, 104 App. Div. 525; *Magar* v. *Hammond*, 171 N. Y. 377; *Odell* v. *N. Y. C. & H. R. R. R. Co.*, 120 N. Y. 323; *Kleffmann* v. *Dry Dock R. R. Co.*, 104 App. Div. 416; *Lyons* v. *Avis*, 5 App. Div. 193; *Kerin* v. *U. T. Co.*, 117 App. Div. 314.)

*Edward F. Brown* for respondent. The cause of the fall of the scaffold is a conjecture and inference and, therefore, the maxim *res ipsa loquitur* applies: "It must have fallen because there was something the matter with it." (Lawson on Presump. Ev. [2d ed.] 122; *Griffen* v. *Manice*, 166 N. Y. 188; *Harris* v. *B. M. & E. Works*, 188 N. Y. 141; *Guilmartin* v. *Solvay Process Co.*, 189 N. Y. 490.)

VANN, J. On the 29th of April, 1905, the plaintiff's intestate, a plumber in the permanent employment of the defendant, was so injured through the fall of a scaffold that he died in a short time. This action was brought under the Code of Civil Procedure and the Employers' Liability Act to recover the pecuniary damages sustained by his next of kin.

The accident occurred in a coal vault beneath the sidewalk of No. 1 Broadway in the city of New York. The structure upon which the decedent was working when the accident happened was used by the defendant in its business, although it does not appear by whom it was erected, or to whom it belonged. In the pleadings, by the witnesses and by counsel in their arguments it was called and treated as a scaffold. About a year before the occurrence in question it was used by the defendant, but after that its history does not appear, except that it remained in the same position in the vault until after the lapse of a year it was again used by the defendant. It was about nine or ten feet from the floor and had no support underneath. One end was suspended by two ropes, and the other rested on a wooden brace placed horizontally between two piers to relieve the lateral strain and thus to strengthen the building. The brace was not designed to sustain a vertical strain, and it was kept in place simply by wedges driven

at either end. There was no other fastening. Owing to work on the subway in the street in front, the vault was open and the brace and the wedges were exposed to the variations in moisture and temperature pertaining to the climate for an entire year. The decedent, by the direction of the assistant foreman of the defendant in charge of its work, went upon the scaffold with another man to uncouple a large pipe overhead, but owing to rust or some other cause it was difficult to unscrew it. One man had a wrench and the other a pair of chain tongs, and both exerted all their strength and put all the strain they could on the pipe and scaffold. By pushing upward, as the survivor testified, with all their "might and main," they subjected the scaffold on which they were sitting to a severe vertical strain, when the brace gave way, the scaffold fell, and the decedent was thrown to the floor with such violence as to cause his death.

Upon the trial the jury found for the plaintiff, and the judgment entered on the verdict was affirmed by the Appellate Division, one of the justices dissenting. The defendant appealed to this court, and through its counsel insisted that the judgment should be reversed on account of an error in the charge.

The trial judge, in instructing the jury, laid down the usual elementary propositions relating to negligence, contributory negligence and assumption of risks. He charged further as follows: " Precisely how or why that scaffold fell is not told by any witness. There is no witness, as I recollect the testimony, who gives you any express facts to show why that scaffold fell, and, therefore, I instruct you under the maxim *res ipsa loquitur*, which means that things speak for themselves, that the scaffold must have fallen because there was something the matter with it."

The defendant excepted and asked the court "to leave to the jury the question as to whether there was negligence of any person in the service of the employer entrusted by him with the duty of seeing that the ways, works or machinery were in proper condition, as a question of fact." After mak-

ing this request the counsel for the defendant added: "Your honor charged practically in the language of the statute that the negligence must be that of a superintendent or a person charged with superintendence, and I except to that statement and ask you to leave it to the jury as a question of fact whether there was any such negligence." The court declined and gave the defendant an exception.

In his dissenting opinion, no other being written, Mr. Justice Ingraham said : "I think it was error to refuse to charge the defendant's ninth request. The evidence is uncontradicted that the deceased and his associate placed considerable strain upon this scaffold in trying to unscrew a pipe and that while thus straining the scaffold fell. There was no evidence but that the scaffold would have been perfectly safe if used in an ordinary way."

We also are of opinion that the exceptions raised reversible error, because the doctrine of *res ipsa loquitur* was improperly applied. The *res* of that maxim, which is sometimes misused, is not simply an accident resulting in injury, but the accident and the surrounding circumstances, necessarily shown by proving how the accident occurred, or in other words the occurrence as it appears by proof of the accident. The doctrine does not permit a recovery without some proof of negligence, but it regulates the degree of proof required under certain circumstances. If proof of the occurrence shows that the accident was such as could not have happened without negligence according to the ordinary experience of mankind, the doctrine is applied even if the precise omission or act of negligence is not specified, and even when it does not appear whether the accident was owing to some act done or to some act not done. It is applied when the inference of negligence is required by the nature of the occurrence. Thus the apparent cause of the accident may be want of care in constructing or maintaining or operating a machine, and if the occurrence indicates that the accident could not have happened without negligence in one or more of these respects, it speaks for itself and establishes a *prima facie* case for the jury to con-

sider, even if it does not appear specifically whether or in what respect the machinery was negligently constructed, maintained or operated. Under such circumstances precision in the proof is not required, as the occurrence raises a presumption of negligence, based on common experience, although no specific defect, act or omission appears. The occurrence points to negligence as the cause of the accident, because in the nature of things there could have been no such occurrence without negligence. If the *res*, or the entire occurrence as proved, could not have happened without negligence of some kind, negligence is presumed without showing what kind and the burden of explanation is thrown on the defendant. If, however, proof of the occurrence shows that the accident might have happened from some cause other than the negligence of the defendant, the presumption does not arise and the doctrine cannot properly be applied. Under such circumstances, it is for the jury to find whether the accident was owing to negligence on the part of the defendant, or to some cause for which the defendant was not responsible. The principles upon which the doctrine rests and the circumstances under which it should be applied were so clearly pointed out by Judge Cullen in *Griffen* v. *Manice* (166 N. Y. 188), the leading case upon the subject, that further discussion thereof is unnecessary.

In the case before us the occurrence did not speak for itself, nor permit negligence as the only inference, for the fall of the scaffold may not have been caused by the weight of the men upon it, but by their weight only when augmented in its effect by excessive pressure applied by all the strength they could exert when pushing upward, although indirectly, against a stationary object. One of them, as it was shown, had unusual and the other, as it is presumed, had average strength, and the strain of the pressure may have much exceeded the strain of the weight. The jury, if permitted, might have found that this caused the accident. It was an explanation for them to consider, tending to show why the scaffold fell, but under the charge that it "*must* have fallen

because there was something the matter with it," no consideration thereof was possible and the defendant was deprived of its chief defense. For this error, we think that the judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, WERNER, WILLARD BARTLETT and HISCOCK, JJ., concur.

Judgment reversed, etc.