the references to the petitioner in the opinion be modified. A copy of the petition and notice of this motion was duly served upon the attorneys who represented the appellant at the hearing of the appeal, and they make no opposition to the granting of this motion. It may therefore be assumed that they acquiesce in the view of the petitioner that the language of the opinion referring to him is, to say the least, somewhat severe.

The petition is verified, and contains statements tending to explain and weaken the force of the facts contained in the record, upon which this court based its opinion; but, assuming a right to do so, we do not think it proper to expunge from the record, or to modify, an opinion concurred in by the entire court after full consideration of the evidence given in the case, when the parties to that case are not before us. It is urged by the petitioner that the opinion was offered and received in evidence, as affecting his credibility, in a recent action brought by him to recover for legal services. It is difficult to comprehend how the opinion could be properly admitted as evidence in such a controversy. No appeal, however, was taken by the petitioner from the judgment obtained in his favor in the action referred to, and it must therefore be assumed that the error in the admission of the opinion as evidence was not seriously harmful.

The motion must therefore be denied, but without costs.

---

(74 Misc. Rep. 635.)

### MARCEAU v. RUTLAND R. CO.

(Supreme Court, Trial Term, Franklin County. December, 1911.)

1. MASTER AND SERVANT (§ 265*)—INJURIES TO SERVANT—RES IPSA LOQUITUR.
   In an action by a locomotive fireman to recover for injuries caused by an explosion in the fire box arising from a considerable quantity of water coming into the fire box, the doctrine of res ipsa loquitur is applicable.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908; Dec. Dig. § 265.*]

2. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—QUESTION FOR JURY.
   Where witnesses for defendant testified to an inspection of the engine and repairs thereto two or three days before an explosion in the fire box injuring plaintiff, and to the good condition and freedom from leaks of the engine at that time, the credibility of the witnesses is for the jury.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1010–1050; Dec. Dig. § 286.*]

Action by Arthur G. Marceau against the Rutland Railroad Company. Verdict for plaintiff. Motion for new trial denied.

Moore & Berry, for plaintiff.
Cantwell & Cantwell, for defendant.

VAN KIRK, J. The above-entitled action was tried and a verdict rendered for the plaintiff. This is a motion to set aside the verdict and for a new trial.

The plaintiff was a fireman, working upon an engine of defendant at the time of the accident. There was an explosion, as it was called,

or sudden expansion of steam, which blew open the doors of the fire box and threw a quantity of steam and hot water into the cab, by reason of which the plaintiff was thrown from the cab upon the ground and thereby received injuries. The evidence of the plaintiff described the accident, and the evidence concerning the engine and its construction discloses the following: The fire box is constructed at the rear of the boiler in such manner that the water, when the boiler is full, covers four sides of the fire box, the top, the front, and the right and left side; the bottom and the rear, which adjoins the cab, are not in contact with the water. The front of the said fire box is called the flue plate. This is a sheet of steel five-eighths of an inch in thickness, standing upright between the fire box and the boiler. Into and through this flue plate there are 342 flues; each having a diameter of $1\frac{7}{8}$ inches. The flue or tube is of steel or charcoal iron. The end is put through the flue plate, is then expanded, and the edge is turned over or "beveled" to make a solid fastening of the tube in the flue plate. The tubes then extend from this flue plate, which I shall call the "rear plate," through the boiler and through the front flue plate, in which the tubes are so fixed as to be water tight under a pressure of 220 pounds to the square inch. These tubes are straight, are about 16 feet long between the two plates, and furnish the draft from the fire box to the smokestack. Between the two plates the tubes are immersed in the water in the boiler. The safety valve was set in the engine at 220 pounds, so that, when the pressure exceeded that amount, the engine would relieve itself automatically; or, as expressed, it would "blow off." The engineer testified that the engine had full steam up, just prior to the accident; or, as he expressed it, was just about to "pop," and he had put up his hand to move the lever or valve, which would let more water into the boiler, when the explosion occurred. After the accident, it appeared that one of the tubes on the lower row, but near the center of the flue plate, from side to side, had been pushed forward so that it was entirely free from the rear flue plate and projected some two or three feet through the front flue plate. No other aperture was disclosed, through which any considerable quantity of water could have passed from the boiler into the fire box, and there is no other source from which water or steam could go into the fire box, except from the boiler. A motion for a nonsuit was denied, the court holding that the doctrine of res ipsa loquitur was applicable; that, under the circumstances, it was not necessary for the plaintiff to point out the particular defect which caused the accident; and that the burden was thrown upon the defendant of explaining that it was not its fault or neglect which caused the accident. The defendant then called witnesses—men whom it employed to inspect and repair engines—who testified that, two or three days before the accident, the engine had been in the repair shop, that the entire fire box was inspected, that all the flues were tight and in good condition, and that there were no leaks into the fire box. The men who examined the engine after the accident testified that there was no other orifice from the boiler into the fire box than that from which the flue was found

removed. The defendant moved to dismiss the complaint upon all the evidence, which motion was denied.

There is no further evidence of any defect in the engine, the fire box, or of the flues than above stated. The steam which caused the accident either passed from the boiler about to "pop" through the hole left by the dislocated flue, or was generated in the fire box itself, from water which had passed through the hole. It is plain that, if only a small quantity of water, or even a jet of water, came into the fire box from a leak around one of the flues in the flue plate, constructed as it was, there would have been no sudden expansion of steam sufficient to cause the explosion which occurred. With the 342 openings through the flue plate and free exit to the smokestack, such steam as would have been generated from a small stream or jet of water would have found immediate relief through the flues. It must have been a considerable quantity of water coming suddenly into the fire box which would have furnished sufficient steam to have caused the sudden expansion and force. Apart from steam in the fire box, there is very little expansive pressure; such as would come from the heat or from gases would easily find exit through the flues. Until the flue which was dislocated had been removed, there is no evidence showing how a sufficient quantity of water could have gotten into the fire box.; nor, until the sudden expansion of steam occurred, as the result of that quantity of water coming into the fire box was there any pressure sufficient to have dislocated the pipe. The end of a steam pipe, the metal of which is not over $3/16$ of an inch in thickness, and with an inside diameter of $1\frac{7}{8}$ inches, can furnish very little resistance to pressure. So that, so far as the evidence discloses, there was nothing which could have driven the flue pipe forward until the expansion of steam which caused the accident occurred; and, until it was driven forward, there was no orifice through which any considerable quantity of water or steam could have come into the fire box. So that the fact that the pipe was found after the accident to have been driven forward through and out of the rear plate is not a satisfactory explanation as to the orifice through which the water came into the fire box.

[1] Under the evidence in this case, the rule of res ipsa loquitur in my judgment was properly applied. Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630, is recognized as the leading case upon this rule. On page 194 of 166 N. Y., on page 927 of 59 N. E. (82 Am. St. Rep. 630), the rule is stated as follows:

"When the thing causing the injury is shown to be under the control of the defendant, and the accident is such as in the ordinary course of business does not happen when reasonable care is used, it does, in the absence of explanation by the defendant, afford sufficient evidence that the accident arose from want of care on its part."

If the entire occurrence as proved (the accident and its surrounding circumstances) shows that the accident was such as would not have happened in the ordinary experience of mankind, without negligence on the part of the defendant to cause it, the doctrine is applied; and, because this proof of negligence by circumstantial evidence makes

a prima facie case, it is not necessary to show by direct proof the exact defect. In a case to which the rule does apply, the plaintiff must still show that the negligence of defendant caused the injury; but the res (the accident and surrounding circumstances) shows it, else the rule does not apply. Robinson v. Consolidated Gas Co., 194 N. Y. 40, 41, 86 N. E. 805, 28 L. R. A. (N. S.) 586. It is only applied in those cases where the inference of defendant's negligence is seemingly required by the nature of the occurrence. In the ordinary negligence case the plaintiff must point out the particular defect which caused the accident, to the end that it may be known whether that defect was due to defendant's negligence. Where, however, this rule applies, plaintiff is relieved from showing the particular defect. If the proof of the occurrence and surrounding circumstances shows that the accident would have happened from some other cause than defendant's negligence, the presumption does not arise and the rule is not applied. In Dalzell v. N. Y., N. H. & H. R. R. Co., 136 App. Div. 329, 121 N. Y. Supp. 28, it is held that, in order to apply the rule, it must be shown that the person sought to be charged is in entire control of the operation of the machinery and appliances causing the injury. In Elliott v. Brooklyn Heights R. R. Co., 127 App. Div. 300, 111 N. Y. Supp. 358, it is held that the rule does not apply when the plaintiff's evidence explains the cause of the injury, which may have been due to the negligence of a third party, because it lacks the thing on which the application of the rule must always depend, viz., that the accident could not have happened in the ordinary course except by defendant's negligence.

In the case at bar, the engine was in the care and control of the defendant. While the engineer has charge of the engine while in use on the road, he is not responsible for the inspection and care of the unexposed interior of the engine. This accident occurred because, in some way, a considerable quantity of water or steam passed into or through the heated fire box. There is no satisfactory explanation of the cause of the accident. The evidence of the plaintiff, showing the circumstances and surroundings, disclosed an accident such as would not ordinarily have happened except defendant was negligent. The presumed negligence was in the failure of the defendant to use reasonable prudence and care in inspecting and keeping in repair this engine. The engine was of approved type and was a suitable engine when placed upon the road; and, if in a reasonable condition of repair on the day of the accident, seemingly the accident could not have occurred. Therefore the rule res ipsa loquitur was properly applied to the case. Robinson v. Consolidated Gas Co., 194 N. Y. 40, 41, 86 N. E. 805, 28 L. R. A. (N. S.) 586. But, although the inference of defendant's negligence is seemingly required, under the res of the case, the application of the rule does not declare an absolute liability upon defendant; it simply declares a presumption, a prima facie case for the plaintiff, and the burden is then thrown on the defendant to explain what caused the accident and that this cause was not due to its negligence. Id.

[2] The defendant called employés as witnesses, who testified to the inspection of the engine and the repair of the flues and flue plate

two or three days before the accident. They testified that these things were in good condition when the engine was put on the line after such repairs, and that there were no leaks into the fire box. If this testimony was truthful, it had performed its duty to the plaintiff. But the accident happened. This fact, together with the fact that, within three days, the engine would not ordinarily have been in condition to permit of such an accident, if it had been so repaired, was some contradiction of the defendant's employés. Their credibility was for the jury. They were employés of the defendant, employed for the purpose of and intrusted with repairing the engine and were interested to show that the necessary repairs were made while it was in the shop. O'Flaherty v. Nassau Electric R. Co., 34 App. Div. 74, 77, 54 N. Y. Supp. 96, affirmed 165 N. Y. 624, 59 N. E. 1128. Under the charge of the court the jury must have found that the repairs were not made as testified to. The duty to inspect and repair is the duty of the master and cannot be delegated, "without liability for the negligence of the one to whom he intrusts" the duty. Simone v. Kirk, 173 N. Y. 7, 13, 65 N. E. 739.

The motion for a new trial must therefore be denied, and an order may be prepared accordingly.

Motion denied.